Eric H. Gibbs (State Bar No. 178658)
ehg@girardgibbs.com
Dylan Hughes (State Bar No. 209113)
dsh@girardgibbs.com
Matthew B. George (State Bar No. 239322)
mbg@girardgibbs.com
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Charles A. Ercole, Esquire
cercole@klehr.com
**KLEHR, HARRISON, HARVEY,**
**BRANZBURG & ELLERS, LLP**
260 S. Broad Street
Philadelphia, Pennsylvania 19102-5003
Telephone: (215) 569-4282
Facsimile: (215) 568-6603

*Attorneys for Plaintiffs and the Class*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### RIVERSIDE DIVISION

| | |
|---|---|
| In re FLEETWOOD ENTERPRISES, INC., <br><br> Debtor, | CASE NO. 6:09-bk-14254-MJ <br><br> Chapter 11 |
| SANDRA JUSTICE, ALICIA RICE, RONALD DOUD, JEREMIAH HASTINGS, BRIAN TUCKER, and ROBERT MYERS, individually and on behalf of other similarly situated persons, <br><br> Plaintiffs, <br> v. <br><br> FLEETWOOD ENTERPRISES, INC., FLEETWOOD TRAVEL TRAILERS OF OHIO, INC., FLEETWOOD MOTOR HOMES OF CALIFORNIA, INC., and FLEETWOOD TRAVEL TRAILERS OF OREGON, INC., <br><br> Defendants. | [Jointly Administered] <br><br> ADV. NO.: 6:09-ap-01114-MJ <br><br> **PLAINTIFFS' MOTION FOR (1) ATTORNEYS' FEES AND COSTS; AND (2) SERVICE PAYMENTS TO CLASS REPRESENTATIVES** <br><br> Date: August 5, 2010 <br> Time: 1:30 p.m. <br> Place: Courtroom 301 <br> 3420 Twelfth Street <br> Riverside, CA 92501 <br> Judge: Honorable Meredith A. Jury |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     JURSIDICTION AND VENUE ............................................................................ 2

III.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

      A.      The WARN Action ................................................................................... 2

      B.      The Severance Action ............................................................................... 5

      C.      Discovery and Settlement Negotiations .................................................... 6

      D.      Class Notice Distributed ........................................................................... 7

IV.     ARGUMENT ....................................................................................................... 8

      A.      Plaintiffs' Motion For Attorneys' Fees And Costs ................................... 8

            1.      The Percentage Method Is Commonly Employed with a "Bench
                Mark Rate" of 25% ...................................................................... 8

            2.      A Fee of 25 Percent of the Fund Is Appropriate in this Case ............... 9

                a.      A 25% Fee Award Is Consistent with Similar Cases and is
                    at or Below the Market Rate ............................................. 9

                b.      The Contingent Nature of the Case and the Financial Burden
                    Carried by Plaintiff's Counsel ........................................ 10

                c.      The Result Achieved In Light of the Case's Risks and Difficulty ........... 11

                d.      The Time and Labor Involved ............................................. 12

                e.      The Quality and Efficiency of the Work ............................. 13

                f.      The Complexity of This Action's Factual and Legal Questions
                    and Counsel's Experience in Complex Litigation ..................... 14

      B.      Class Counsel's Expenses are Reasonable and Necessary for the Litigation
          and Should be Reimbursed ................................................................... 14

      C.      The Court Should Approve the Request for Service Payments ..................... 15

V.      CONCLUSION ................................................................................................... 16

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Boeing Co. v. Van Gemert*
4     222 U.S. 472 (1980) ................................................................. 9

5

*Bonner v. Fuji Photo Film*
6     2008 WL 410260 (N.D. Cal. 2008) ........................................ 13

7

*Fischel v. Equitable Life Assur. Soc'y of U.S.*
8     307 F.3d 997 (9th Cir. 2002) ....................................... 9, 11, 12

9

*Gunter v. Ridgewood Energy Corp*
    223 F.3d 190 (3rd Cir. 2000) .................................................. 12
10

11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .................................................. 9
12

13

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994) ..................................................... 15
14

15

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ............................................................... 12
16

17

*In re Charter Comm'ns Inc., Sec. Litig.*
    2005 WL 4045741 (E.D. Mo. 2005) ...................................... 11
18

19

*In re M.D.C. Holdings Secs. Litig.*
    1990 WL 454747 (S.D. Cal 1990) ..................................... 10, 13
20

21

*In re Mego Financial Corp. Securities Litigation*
    213 F.3d 454 (9th Cir. 2000) ............................................ 15, 16
22

23

*In re Oracle Secs. Litig.*
    852 F. Supp. 1437 (N.D. Cal. 1994) ...................................... 10
24

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
    19 F.3d 1291 (9th Cir. 1994) .................................................. 11
25

26

*In re Xcel Energy, Inc.*
    364 F. Supp. 2d 980 (D. Minn. 2005) .................................... 12
27

28

*Seiffer v. Topsy Int'l, Inc.*
    70 F.R.D. 622 (D. Kan. 1976) ................................................ 11

*Six Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) .................................................................... 9, 14

*Stanton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 9

*Van Vranken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 15

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ....................................................................... 9

*Winterrowd v. American General Annuity Ins. Co.*
    556 F.3d 815 (9th Cir. 2009) ....................................................................... 13

**Statutes**

29 U.S.C. §§ 2101 ............................................................................................. 3

29 U.S.C. §§ 2102 ......................................................................................... 3, 4

29 U.S.C. §§ 2104 ............................................................................................. 9

Cal. Lab. Code § 1400 ...................................................................................... 3

Cal. Lab. Code § 1401 ...................................................................................... 3

Cal. Lab. Code § 1402.5 .................................................................................. 4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Plaintiffs Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, Robert

3

Myers, and Curtis Jay Howe ("Plaintiffs"), on their own behalves and on behalf of all other persons

4

similarly situated ("Class Members"), hereby move this Court pursuant to section 105(a) of title 11 of

5

the United States Code (the "Bankruptcy Code") and Rule 7023 of Federal Rules of Bankruptcy

6

Procedure ("Bankruptcy Rules") (incorporating Rule 23 of the Federal Rules of Civil Procedure), for the

7

entry of an order in the form of Exhibit 1 hereto: (i) approving an award of attorneys' fees and costs to

8

Class Counsel; and (ii) approving the award of Service Payments to the Class Representatives.  Plaintiffs

9

provide the following memorandum in support of this motion:

10

## I.    INTRODUCTION

11

On May 25, 2010, the Court issued two orders granting preliminary approval of a comprehensive

12

settlement that resolves two class actions brought by Plaintiffs against Debtor-Defendants Fleetwood

13

Enterprises, Inc. ("FEI"), Fleetwood Travel Trailers of Ohio, Inc., Fleetwood Travel Trailers of Oregon,

14

Inc. and Fleetwood Motor Homes of California, Inc. (collectively, the "Defendants").  The first action,

15

entitled *Sandra Justice, et al. v. Fleetwood Enterprises, Inc., et al.*, Consolidated Adversary No. 6:09-

16

ap-01114-MJ ("WARN Action"), asserts claims against Defendants for alleged violations of the federal

17

Worker Adjustment and Retraining Notification Act ("the WARN Act"), 29 U.S.C. section 2100, *et seq.*

18

and California Labor Code section 1400, *et seq.* (the "California WARN Act").  The second action,

19

entitled *Curtis Howe v. Fleetwood Enterprises, Inc.*, Adversary No. 6:09-ap-01421-MJ ("Severance

20

Action"), asserts claims for breach of contract and violation of ERISA for FEI's alleged failure to pay

21

severance to employees terminated after March 9, 2009.[1] [2]  The settlement reached in these actions

22

provides compensation to more than 1,300 of Defendants' former employees relating to the termination

23

of their employment.

24

25

[1] The Debtors contemporaneously filed a Motion for Approval of Compromise in the main bankruptcy
case seeking approval of the settlement pursuant to Bankruptcy Rule 9019 (Bankruptcy Docket No.
2090).  At the preliminary approval hearing in May, the Court expressed its intention to consider entry
of an order on the Rule 9019 motion at the fairness hearing on August 5, 2010.

26

27

28

[2] This motion and supporting documents are being filed on the dockets for both the WARN and
Severance Actions.

Defendants have agreed to pay $1,550,000 to resolve these two class actions, which includes the award of attorneys' fees, costs and Service Payments to Class Representatives sought in this motion. Notice of the settlement has been distributed to Class Members and the parties are set to appear on August 5, 2010 for a fairness hearing. For purposes of facilitating the settlement, the Court has appointed the law firms of Girard Gibbs LLP and Klehr, Harrison, Harvey, Branzburg & Ellers LLP as Class Counsel. Plaintiffs have also been represented by the law firms of Stueve Siegel Hanson LLP and Lapidus & Lapidus PLC. For purposes of this motion, the term "Class Counsel" shall refer collectively to all four firms that have worked on behalf of the Plaintiffs and Class Members.

## II.    JURSIDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 7023 and Rule 23 of the Federal Rules of Civil Procedure ("Civil Rules").

## III.    FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Defendants conducted layoffs of employees from its operations throughout the United States. *See* Declaration of Michael Shearin, ¶¶ 4-8, filed in support of the Joint Motion for Preliminary Approval of the Settlement ("Preliminary Approval Motion") [WARN Docket No. 35 (Doc. 5)]. On March 9, 2009, the terminations peaked with the closures of Defendants' travel trailer manufacturing facilities in La Grande and Pendleton, Oregon, and Edgerton, Ohio. *Id.* That same day dozens of employees were also let go from a motorhome manufacturing facility and the corporate headquarters of FEI in Riverside, California. *Id.* On March 10, 2009, FEI and many of its affiliates and subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). Plaintiffs then commenced the instant adversary proceedings.

### A.    The WARN Action

Between March 10 and 12, 2009, three separate putative class action adversary proceedings were filed against the Defendants captioned *Robert Myers v. Fleetwood Enterprises, Inc.*, Adversary No. 6:09-ap-01105-MJ ("*Myers Action*"), *Sandra Justice and Alicia Rice v. Fleetwood Enterprises, Inc.*,

Adversary No. 6:09-ap-01108-MJ ("*Justice Action*"), and *Ronald Doud and Brian Tucker v. Fleetwood Enterprises, Inc.*, Adversary No. 6:09-ap-01114-MJ ("*Doud Action*"). The Plaintiffs in the WARN Act adversary proceedings are all former employees of Defendants. The lawsuits generally allege that Defendants terminated Plaintiffs and similarly situated employees in violation of the federal and California WARN Acts by failing to provide 60 days' advance notice before initiating the layoffs on March 9, 2009. Plaintiffs seek damages in the form of 60 days' unpaid wages, statutory penalties, attorneys' fees and costs of suit. Soon after filing the lawsuits, the four Class Counsel firms agreed to work cooperatively to ensure the efficient prosecution of Plaintiffs' claims. *See* Joint Declaration of Charles Ercole and Eric H. Gibbs, ¶ 6 ("Joint Decl."). Via stipulation with the Defendants, the parties consolidated the three adversary proceedings under the *Doud Action*, Adversary No. 6:09-ap-01114-MJ, and dismissed the *Myers Action* and the *Justice Action*. On September 22, 2009, the Plaintiffs filed the Consolidated Complaint for Damages and Other Relief against the Defendants.

In general terms, the WARN Act requires that an employer that conducts a "mass layoff" or plant closing resulting in the termination of 50 or more employees must provide the employees with 60 days' advance notice of termination. *See* 29 U.S.C. §§ 2101-2102. A "mass layoff" occurs when a reduction in force results in the loss of employment of at least 50 employees <u>and</u> at least 33% of the employer's workforce. *Id.* § 2101(a)(3). The California WARN Act requires that any employer that has more than 75 employees and which conducts a "mass layoff," (defined as "a layoff during any 30-day period of 50 or more employees") or a "termination," (defined as the "cessation or substantial cessation of industrial or commercial operations,") must provide 60 days' notice to the employees prior to their termination. Cal. Lab. Code §§ 1400-1401. As discussed below, an employer may be excused from complying with the WARN Act and the California WARN Act under certain circumstances.

The parties' respective positions with respect to the WARN Action are discussed at length in the Preliminary Approval Motion. To summarize here, the WARN Class Plaintiffs allege that each of the Defendants violated the WARN Act and that FEI and Fleetwood Motorhomes of California also violated the California WARN Act, by failing to provide 60 days' advance notice of the layoffs, and that Defendants owe the affected employees 60 days' back pay and benefits. Plaintiffs contend that none of the statutory exceptions to liability under the WARN Act are available to the Debtors because the events

that led to the Debtors' failure and the termination of approximately 670 employees in March 2009 were foreseen and/or foreseeable as the problems relating to the recreational vehicle industry were well known in the industry long before the 60-day period prior to the layoffs at issue.  Plaintiffs also contend that the Defendants cannot avail themselves of the faltering company defense under the WARN Act or the California WARN Act because even if the Defendants were actively seeking capital or business, they could not prove that such capital, if obtained, would have enabled them to avoid or postpone shutdown for a reasonable period of time and could not otherwise demonstrate that they reasonably and in good faith believed that giving the required notice would have precluded them from obtaining the needed capital or business.  Plaintiffs also refute the Defendants' reliance on the liquidating fiduciary defense because Fleetwood Oregon and Fleetwood Ohio had not filed for chapter 11 protection prior to conducting the terminations and because all of the Defendants, including Fleetwood Ohio and Fleetwood Oregon, continued to operate postpetition as a going concern.

The Defendants have vigorously denied Plaintiffs' allegations and assert multiple affirmative defenses, including the faltering company, unforeseen business circumstances and liquidating fiduciary defenses. The faltering company defense excuses a company from giving the full 60 days' notice of a plant shutdown under the WARN Act if it meets four requirements:  (1) the employer must have been actively seeking capital or business at the time the notice would have been required; (2) there must have been a realistic opportunity to obtain the capital or business sought; (3) the employer must show that if obtained, the capital or business would have enabled the employer to avoid or postpone shutdown for a reasonable period of time; and (4) the employer must demonstrate that it reasonably and in good faith believed that giving the required notice would have precluded it from obtaining the needed capital or business.  29 U.S.C. § 2102(b)(1); *see also* Cal. Lab. Code § 1402.5 (providing a similar statutory defense to California WARN Act claims).

Under the WARN Act, the notice period may also be reduced when the event triggering the layoffs is caused by business circumstances that were not reasonably foreseeable 60 days prior the mass layoff or plant shutdown.  29 U.S.C. § 2102(b)(2)(A).  The Defendants contend that unforeseen business circumstances relieved them of any obligation to give 60 days' notice and have set forth some of the factual basis for this defense in the Declaration of Andrew M. Griffiths ("Griffiths Decl.") filed with the

Preliminary Approval Motion [WARN Docket No. 35 (Doc. 4)]. Griffiths Decl., ¶¶ 5-8. Defendants also contend that Fleetwood Ohio and Fleetwood Oregon were not obligated to comply with the WARN Act because certain subsidiary Defendants were "liquidating fiduciaries" and therefore had no obligation to provide 60 days' advance notice of the terminations. *Id.*, ¶ 8. Lastly, the Defendants contend that if any liability is established, aggrieved employees would only be entitled to a limited recovery and dispute the applicability of the California WARN Act to some of the employees that were terminated in Riverside, California because Defendants contend the numerical thresholds for WARN Act liability have not been met.

### B.    The Severance Action

On August 28, 2009, Plaintiff Curtis Jay Howe, a former employee of Fleetwood Travel Trailers of Texas, Inc., filed a class action against FEI alleging claims for breach of contract and violation of ERISA on the grounds that FEI had an obligation pursuant to its Severance Policy to pay severance to terminated employees, but failed to do so. The proposed class period runs from March 9, 2009 to the present. Plaintiff Howe alleges that the Severance Policy created a contractual obligation on the Defendants' part to pay severance to all terminated employees commensurate with their length of service and position. He alleges that the Severance Policy constituted an offer to receive a benefit in exchange for performing work for the Defendants, which he and others accepted by working for the Defendants. Plaintiff Howe further alleges that the Severance Policy constituted an ERISA plan, and that the Defendants violated ERISA by denying severance benefits.

The Defendants maintain that the Severance Policy was not an ERISA plan and that the policy did not create any contractual obligation to pay severance. In conjunction with the Preliminary Approval Motion, Debtors submitted a declaration stating that the Severance Policy was suspended on March 9, 2009, effectively terminating it. Shearin Decl., ¶ 7. The Defendants also contend that the Severance Policy did not constitute a contract and contained other provisions and requisite conditions which made it inapplicable to Plaintiff and other members of the putative class. The Defendants support their defense to the Severance Action with a previous finding by the Court that the Debtors had the right to terminate the Severance Policy when it denied the application for administrative expense filed by Jeaneen B. Goff [Bankruptcy Case, Docket Nos. 947, 1052, 1331, 1475].

C.    **Discovery and Settlement Negotiations**

After the filing of the Severance Action and the consolidation of the WARN Action, the parties informally discussed the possibility of a resolution to the actions.  On December 14, 2009, the parties met in Los Angeles, California and had lengthy discussions in an effort to obtain a settlement.  Prior to the meeting, Class Counsel had done a thorough investigation of Plaintiffs' claims which included a review of documents provided by Plaintiffs, Class Members, and documents and payroll data that had been informally produced to Plaintiffs for purposes of exploring settlement.[3]  Plaintiffs' estimates of the Defendants' potential liability were guided in large part by their analyses of the payroll data as well as the applicable formulae for calculating damages under the WARN Act.  Joint Decl., ¶ 12.  Prior to the meeting the parties also prepared and exchanged extensive letter briefs outlining their respective legal positions with supporting facts and case law.  *Id*., ¶ 13

The settlement negotiations were conducted at arm's length by experienced counsel who vigorously represented their clients' interests.  Defendants were represented by Craig H. Millet and Michele L. Maryott of the law firm Gibson, Dunn & Crutcher LLP.  The Official Committee of Creditors Holding Unsecured Claims took an active role in the conference and was represented by Kenneth H. Brown of Patchulski, Stang, Ziehl & Jones.  *Id*., ¶ 14 .  Plaintiffs were represented at the settlement conference by Class Counsel who have extensive experience in complex class litigation, bankruptcy proceedings, employment, and WARN Act litigation.  *See* Ercole Decl., ¶¶ 4-6; Gibbs Decl. at ¶¶ 4-9, Ex. 1 (firm resume); Decl. of Richard M. Paul, ¶¶ 4-8, Ex. 1 (firm resume); Decl. of Daniel C. Lapidus, ¶ 4.  During the settlement conference, the parties intensely debated their respective legal positions and the impact of Defendants' constrained financial situation on the lawsuits.  Negotiations were robust as both sides zealously advocated their interests before ultimately agreeing to the terms of the settlement.  The terms of the settlement were refined and finalized through subsequent negotiations and the drafting and execution of a Settlement Agreement.  Joint Decl., ¶¶ 14-16.

Under the Settlement Agreement, Defendants will pay a maximum of $1,550,000 to compensate Class Members for unpaid wages, plus the employer's share of payroll taxes on the Settlement Payments.  *Id*., Ex. 1.  Key terms of the settlement include:

---

[3] Plaintiffs propounded formal document requests in the WARN Action in November 2009.

- Conditional certification of the WARN and Severance Classes.[4]

- From the Settlement Amount, $1,400,000 shall be allocated to the WARN Class Claims, and $150,000 shall be allocated to the Severance Class Claims.

- Individual payments to Class Members are based on a pre-determined formula. Each Class Member will be entitled to a payment of a pro rata amount of the Settlement Amount based on the relationship each Settlement Class Member's claim bears to the aggregate of the total of the Class Members' claims.

- The settlement payments shall be treated as priority claims (unless that Class Member has exhausted the $10,950 priority cap in which event the amount of the Class Member's settlement exceeding the $10,950 priority cap will be treated as an allowed, general unsecured claim).

- Class Members have a right to opt out of the Settlement Agreement. In the event a Class Member opts out of the Settlement Agreement, the Settlement Amount shall be reduced by the amount that the Class Member would have received had they not opted out.

- The Debtors and the Committee have agreed not to oppose Class Counsel's request for (a) attorneys' fees not to exceed $400,000, (b) costs, including the costs of Settlement Administration, not to exceed $55,000, and (c) Service Payments to the Class Representatives in the amount of $2,000 each.

- Any Residual Funds not distributed to Settlement Class Members will revert to the Debtors.

### D.    Class Notice Distributed

On June 4, 2010, the Settlement Administrator RUST Consulting mailed the court approved form of class notice to Class Members. Joint Decl., ¶ 19. Class Members have until the date of the filing of this motion to request exclusion or object to the settlement. As of July 12, 2010, the Settlement Administrator has received no objections to the settlement. To date, three WARN Class Members have

---

[4] 100 persons are members of both the WARN and Severance Classes and are eligible for benefits under both settlements.

1    requested exclusion and thirty Severance Class Members have requested exclusion.  Two additional

2    requests for exclusion have been received from former employees who are members of both the WARN

3    and Severance Classes.  *Id.*, Ex. 2 (Settlement Administrator report dated 7/9/10).  On July 22, 2010,

4    Class Counsel will file a final report with the total number exclusions and Class Counsel will also

5    address any objections to the settlement (or this fee application) no later than July 29, 2010.

6    **IV.    ARGUMENT**

7        **A.    Plaintiffs' Motion For Attorneys' Fees And Costs**

8        Having obtained a favorable settlement for the Plaintiffs and classes, Class Counsel now

9    respectfully request attorney fees amounting to 25% of the maximum settlement amount, or $387,500[5]

10    plus $43,277.48 in actual expenses incurred.  To date, Plaintiffs' counsel have invested over 900 hours

11    of attorney and paralegal time, payment for which has been wholly contingent on a favorable result for

12    the Plaintiffs and classes.  *See* Joint Decl., ¶ 31; Paul Decl. at ¶ 20; Gibbs Decl. at ¶ 20.  The proposed

13    fee award is consistent with the terms of the Settlement Agreement and the award sought is almost equal

14    the current lodestar amount of $363,097.60.  *See* Joint Decl., ¶ 31; Ercole Decl., ¶ 11; Paul Decl., ¶ 18;

15    Lapidus Decl., ¶ 8; Gibbs Decl., ¶ 18.  The requested costs and expense reimbursement of $43,277.48

16    includes the amount of Class Counsel's litigation-related expenses as well as the costs associated with

17    Settlement Administration.  Joint Decl., ¶ 31; Ex. 3.

18        **1.    The Percentage Method Is Commonly Employed with a "Bench Mark Rate"**

19            **of 25%**

20        "In a certified class action the court may award reasonable attorney's fees and non-taxable costs

21    that are authorized by law or by the parties' agreement."  Bankruptcy Rule 7023 incorporating F.R.Civ.P.

22    23(h).  Here, Plaintiffs' fee application is "authorized by law" in at least two respects.  First, "[w]hen

23    counsel recover a common fund which confers a 'substantial benefit' upon a class of beneficiaries, they

24    are entitled to recover their attorney's fees from the fund."  *Fischel v. Equitable Life Assur. Soc'y of*

25    *U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002).  Second, having obtained a settlement for the classes in this

26

27    ───────────────────────
[5] If the Court approves Class Counsel's proposed fee award of 25% of the total settlement, the actual
28    amount will be finalized once the settlement allocations are determined.  In any event, the fee will
actually be somewhat less than $387,500 because Class Counsel's fee will be reduced commensurate
with the reduction in total settlement value for each opt-out.

case, Plaintiffs' counsel are entitled to reasonable attorneys' fees under the WARN Act's fee shifting

provisions. *See* 29 U.S.C. § 2104. For such attorneys' fee awards, the United States Court of Appeals

for the Ninth Circuit has repeatedly affirmed the use of the percentage method for calculating a

reasonable fee. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Staton v.*

*Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("there is no preclusion on recovery of common fund fees

where a fee-shifting statute applies."). When the percentage method is employed, courts in the Ninth

Circuit generally deem 25% to be the "benchmark rate." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

1047-48 (9th Cir. 2002). "[A]ttorneys' fees sought under a common fund theory should be assessed

against every class members' share, not just the claiming members." *Six Mexican Workers v. Arizona*

*Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472,

480 (1980)).

Where appropriate and possible, compensating counsel on a percentage basis generally makes

good sense. The method aligns Class Counsel's interests with those of the class, creating a strong

incentive to maximize the possible recovery in a prompt and efficient manner. Here, Class Counsel

secured a settlement fund of $1,550,000, benefitting the Plaintiffs and the classes. Using the 25% bench

mark rate, Class Counsel's fee award amounts to $387,500. Consistent with the terms of the Settlement

Agreement, Plaintiffs request an attorney fee award in that amount. Joint Decl., Ex. 1 (Settlement

Agreement).

### 2. A Fee of 25 Percent of the Fund Is Appropriate in this Case

The circumstances surrounding the litigation and settlement of this case establish the propriety of

the fee and costs requested.

### a. A 25% Fee Award Is Consistent with Similar Cases and is at or Below the Market Rate

Attorneys' fee awards of 25% of the common fund are prevalent in the Ninth Circuit and are

consistent with awards in similar cases. The Central District of California Bankruptcy Court recently

approved a 33% common fund attorneys' fee on a settlement of similar value in another WARN Act

case involving a motor vehicle manufacturer. *See Caouette v. National RV Holdings, Inc.*, Adv. No.:

6:07-01305-PC (final approval order granted Feb., 24, 2009 [Docket No. 52]). *See also Gan v.*

1    *Northpoint Communications Group, Inc.*, Adv. No. 01-3107-TC (Bankr. Ct. N.D. Cal.) (30% common

2    fund fee awarded by the Northern District of California Bankruptcy Court in WARN Act class action

3    that settled for $3 million).

4           Twenty-five percent of the common fund is also well within the range of reasonableness that has

5    been repeatedly approved by courts throughout the country in WARN Act settlements.  *See Cabreros*

6    *and Refuerzo v. Spansion*, Adv. No.: 09-50409-KJC (Bankr. D. Del. 2010) (approving attorneys' fees of

7    25% of priority claims of $8.5 million settlement fund);  *In re Consolidated Freightways Corp.*, Case

8    No. 02-24284 MG (Bankr. C. D. Cal. 2002) (approving attorney's fees in the amount of 33% of the

9    fund); *In re Oakwood Homes Corp.*, Adv. Pro. No. 03-52178 (Bankr. D. Del. 2002) (awarding 33%); *In*

10   *re Charter Behavioral Health Sys., LLC*, Adv. Pro. No. 00-562 (Bankr. D. Del. 2001) (awarding 33%);

11   *In re Preston Trucking*, Case. No. 99-59994, (Bankr. D. Md. 1999) (awarding 33%); *In re Matchlogic*,

12   Case No. 01-32495-TC, (Bankr. N.D. Cal. 2001) (awarding 33%); *In re Living.com*, Case No. 00-12523

13   (Bankr. W.D. Tex. 2000) (awarding 33%); and *In re Value America*, Case No. 00-02269-WA3 (Bankr.

14   W.D. Va. 2000) (awarding 33%).

15          In addition, 25% is lower than or equal to the rates reflected in the private marketplace, which is

16   a result encouraged by the courts.  *See In re Oracle Secs. Litig.*, 852 F. Supp. 1437, 1450 (N.D. Cal.

17   1994) ("The object in awarding a reasonable attorney's fee is to give the lawyer what he would have

18   gotten … in an arm's length negotiation, had one been feasible").  "In private contingent litigation, fee

19   contracts have traditionally ranged between 30% and 40% of the total recovery."  *In re M.D.C. Holdings*

20   *Secs. Litig.*,1990 WL 454747, at *7.  Here, Class Counsel have been collectively retained by Plaintiffs

21   and over 150 Class Members.  Joint Decl., ¶ 34.  The private contingency agreements with those Class

22   Members provide for Class Counsel to recover 33% of any award.  *Id*.  Thus, the 25% actually sought is

23   this motion is substantially less and therefore provides the Class Members with a greater share of the

24   total settlement fund.

25                   **b.      The Contingent Nature of the Case and the Financial Burden Carried**

26                           **by Plaintiff's Counsel**

27          The Court should also consider the contingent nature of counsel's fee.  *In re Wash. Pub. Power*

28   *Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).  "[I]n the common fund context, attorneys

1  whose compensation depends on their winning the case, must make up in compensation in the cases they

2  win for the lack of compensation in the cases they lose." *Id.* at 1300-01; *accord Fischel*, 307 F.3d at

3  1008 ("In common fund cases, there is no concern about financially burdening a defendant to

4  compensate for the risk of nonpayment . . . . In such cases, the plaintiffs 'should share the wealth with

5  the lawyers whose skill and effort helped create it.'").

6       Plaintiffs' counsel here routinely evaluate requests for representation. Paul Decl., ¶ 20; Gibbs

7  Decl., ¶ 20. By agreeing to represent a party in any given case, the attorneys therefore necessarily

8  decline representation in other potential cases. The attorneys agree to undertake a contingent fee case

9  with the understanding that the potential fee earned in the case must be substantially higher than the

10  firm's regular hourly rate would yield to compensate Plaintiffs' counsel for the substantial risk involved.

11       Of course, there are also inherent risks present in any litigation. As one court has phrased it,

12  "[t]he certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might

13  be achieved by a trial." *Seiffer v. Topsy Int'l, Inc.*, 70 F.R.D. 622, 629 (D. Kan. 1976). In the case at

14  bar, Plaintiffs recognize the significant risk that would have attended prolonged litigation and trial in this

15  case. The settlement fund was negotiated for the Plaintiffs and classes with that risk in mind; its

16  acquisition has provided certainty to the Class Members seeking compensation.

17       Here, the risks were amplified by the fact that the Defendants and the Committee of Unsecured

18  Creditors were represented by very able opposing counsel who vigorously defended and represented

19  their clients. *See In re Charter Comm'ns Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *17

20  (E.D. Mo. June 30, 2005) ("the quality and vigor of opposing counsel is important in evaluating the

21  services rendered by" plaintiffs' counsel). Due to the contingent nature of the representation, Plaintiffs'

22  counsel have received no compensation for their work, while expending over $43,277.48 in expenses on

23  behalf of the Plaintiffs and classes. *See* Joint Decl., ¶ 31; Ercole Decl., Ex. A; Paul Decl., ¶ 21, Ex. 3;

24  Gibbs Decl., ¶ 21, Ex. 3; Lapidus Decl., ¶ 9. Plaintiffs' counsel respectfully suggest that the 25% fee

25  requested here fairly compensates counsel for the substantial risks they assumed in representing the

26  Class and for the favorable outcome they achieved.

27              **c.**    **The Result Achieved In Light of the Case's Risks and Difficulty**

28  The result achieved in light of the risks involved is a major factor to be considered in approving a

11

fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In this case, it would be inappropriate to consider the "result achieved" apart from the context of the case and, more specifically, the risks counsel assumed by choosing to represent these Plaintiffs and classes. *See Fischel*, 307 F.3d at 1008 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment.").

Considering Fleetwood's financial situation at the time the adversary proceedings were filed, the acquisition of any settlement fund for the Plaintiffs and classes was far from inevitable. Even if Plaintiffs were able to overcome the many statutory defenses available to the Defendants on the WARN Act claims, there was a substantial risk that there would not be any funds to pay the judgment. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3rd Cir. 2000) (the risk of non-payment was present due in part to Defendants being "close to insolvency.") The $1,550,000 Settlement Amount must be viewed in this context and therefore viewed as an indisputably successful result for the Plaintiffs and classes. *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day").

### d.    The Time and Labor Involved

The law firms representing the Plaintiffs and classes expended significant resources to investigate, litigate, and ultimately settle this case. To date, Plaintiffs' counsel have devoted over 900 hours to this litigation. *See* Joint Decl., ¶ 31; Ercole Decl., ¶ 11; Paul Decl. at ¶ 18; Lapidus Decl., ¶ 8; Gibbs Decl., ¶ 18. This total is comprised of the time spent on investigation, discovery, research and briefing, and settlement negotiations. Class Counsel have also spent a substantial amount of time communicating with Class Members about the progress of the litigation and Fleetwood's bankruptcy. In fact, Plaintiffs' counsel have established a website (*see* http://www.girardgibbs.com/fleetwoodmasslayoff.asp) where Class Members can obtain information about the lawsuit, and have sent Class Members email updates regarding the status of the case including the settlement. Joint Decl., ¶¶ 28-29; Gibbs Decl., ¶ 15. The work performed by Class Counsel is summarized in the Declarations submitted with this motion and Class Counsel can provide the Court with detailed billing records in the event the Court should wish to review them. *See Winterrowd v. American General Annuity Ins. Co.*, 556 F. 3d 815, 827(9th Cir. 2009) ("Testimony of an attorney as to

the number of hours worked on a particular case is sufficient evidence to support an award of attorney

fees, even in the absence of detailed time records.")  Class Counsel will continue to dedicate time to

finalize the settlement and answer Class Members' inquiries.  Joint Decl., ¶ 32.

Although this motion requests an award of attorney fees based on the percentage method, it is

noteworthy that the requested award is almost equivalent with what counsel might have received

following the lodestar approach.  Based on the number of hours worked, the lodestar figure would

amount to over $363,000.  Joint Decl., ¶ 31; Ercole Decl., ¶ 11; Paul Decl., ¶ 18; Lapidus Decl., ¶ 8;

Gibbs Decl., ¶ 18.  This figure could be subject to a potential multiplier.  *See Bonner v. Fuji Photo

Film*, No. C 06-04374, 2008 WL 410260, at *2 (N.D. Cal. Feb. 12, 2008).  Though the point does not

now warrant detailed analysis, Plaintiffs respectfully submit that the multiplier factors would weigh in

favor of a positive multiplier.  Regardless, because the initial lodestar figure is almost equal the

$387,500 requested, the Court can be confident that the request is reasonable.

Finally, Plaintiffs note that the relatively early settlement in this case.  "Early settlements benefit

everyone involved in the process and everything that can be done to encourage such settlements –

especially in complex class action cases – should be done."  *In re M.D.C. Holdings Sec. Litig.*, No.

CV89-0090, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) (awarding 30% of common fund where

"Class counsel obtained this result in a very short period of time").  Class Counsel's success in

achieving an early settlement spared the parties and the Court additional time and expense and, given the

external circumstances noted above, enabled an optimal settlement for Class Members.  Moreover, an

early settlement was exceptionally important in this case considering that the Class Members had all lost

their jobs in the midst of the economic collapse and have had to weather the numerous financial

difficulties associated with such a sudden and drastic change.  This Settlement compensates them sooner

rather than later.

### e.      The Quality and Efficiency of the Work

Plaintiffs respectfully submit that the quality and efficiency of their work supports the fee

application.  Class Counsel pursued this case vigorously and have achieved excellent very good result

under the circumstances.  Class Counsel have done so in an efficient and skilled manner, effectively

using their collective experience prosecuting complex class actions, labor and employment cases, and bankruptcy expertise to navigate the difficulties posed in both the substantive issues raised by the WARN Act litigation and by the external circumstances of the Defendants' bankruptcy. *See* Ercole Decl., ¶¶ 4-6; Gibbs Decl. at ¶¶ 4-9, Ex. 1 (firm resume); Paul Decl., ¶¶ 4-8, Ex. 1 (firm resume); Lapidus Decl.,¶ 4.

      **f.**  **The Complexity of This Action's Factual and Legal Questions and
Counsel's Experience in Complex Litigation**

  The instant motion is further buttressed by the complex nature of the legal claims in this case. *Six Mexican Workers*, 904 F.2d at 1311. Class actions are inherently complex. This case was even more so, due to the formidable statutory defenses available to Defendants under the WARN Acts and the substantial factual and legal defenses they have asserted to the Class Members' claims for severance pay. *See* Section, III, *supra*. As the Court noted at the preliminary approval hearing, this case would be unlikely to resolve on summary judgment, and therefore a trial on some of the factual disputes in the case would be likely be necessary.

  Class Counsel have extensive experience prosecuting complex class actions, employment, and WARN Act cases. *See* Ercole Decl., ¶¶ 4-6; Gibbs Decl. at ¶¶ 4-9, Ex. 1 (firm resume); Paul Decl., ¶¶ 4-8, Ex. 1 (firm resume); Lapidus Decl.,¶ 4. Their collective experience and knowledge was instrumental in facilitating a thorough yet expeditious analysis of the case and in moving the case toward a settlement capable of compensating the Class Members. In sum, the complexities of this case as well as Class Counsel's extensive experience support granting the instant motion.

  **B.**  **Class Counsel's Expenses are Reasonable and Necessary for the Litigation and
Should be Reimbursed**

  Class Counsel seek reimbursement for the out-of-pocket expenses incurred throughout the litigation, totaling $43,277.48 incurred through the date that cost and expenses were tabulated for this Motion which is less than the $55,000 maximum amount authorized by the Settlement Agreement. Counsel's expenses are summarized in the declarations submitted herewith but generally include filing fees, legal research, mediation fees, and the $28,140 in costs for Settlement Administration. *See* Joint Decl., ¶ 31; Ercole Decl., Ex. A; Paul Decl., ¶ 21, Ex. 3; Gibbs Decl., ¶ 21, Ex. 3; Lapidus Decl., ¶ 9.

To determine whether costs are compensable, courts typically look to whether the costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").  The categories of expenses for which Plaintiffs' counsel seek reimbursement here are categories normally charged to hourly clients and, therefore, should be reimbursed out of the common fund.  *See* Joint Decl., ¶ 31; Ercole Decl., Ex. A; Paul Decl., ¶ 21, Ex. 3; Gibbs Decl., ¶ 21, Ex. 3; Lapidus Decl., ¶ 9.

### C.    The Court Should Approve the Request for Service Payments

The Settlement provides for Service Payments of $2,000 to be paid to each of the seven Class Representatives.  The total amount of all the requested Service Payments is $14,000.  The Service Payments are intended to recognize the time and efforts that the Class Representatives expended on behalf of the Classes, as well as risks they incurred in the litigation.  The award of Service Payments (sometimes referred to as "incentive awards") is within the Court's discretion.  *See In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000).  Factors the Court may consider in determining whether to make a Service Payment include: "(1) the risk to the class representatives in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, several factors support the Service Payments requested.  The Class Representatives each agreed to serve as named plaintiffs in class actions against their former employer and exposed themselves to unwanted attention from press and future or prospective employers (or even Fleetwood as a re-employer).  They all provided valuable services and assistance on behalf of other Class Members that took considerable time and effort including by providing documents and information to counsel and by reviewing the pleadings and Settlement Agreement. Joint Decl., ¶¶ 21-27.  They also each stood ready to sit for depositions and to appear as witnesses at trial and were committed to seeing this litigation through for the duration, knowing it could take years to resolve.  *Id.*

1  The amounts sought for the Service Payments are well within the range that have been awarded

2  to named plaintiffs in other comparable cases, and are otherwise fair and reasonable when considered in

3  terms of the total settlement value. *See id.*; see also *In re Mego* (approving incentive awards of $5,000

4  to two class representatives in $1.725 million settlement); 213 F.3d at 463; *Caouette v. National RV*

5  *Holdings, Inc.*, Adv. No.: 6:07-01305-PC (Bankr. C.D.Cal.) (awarding $3,000 to class representative in

6  $995,000 WARN Act settlement); *McConnach v. First Franklin Corp.*, 3:08-cv-04154-CRB (N.D. Cal.)

7  (two class representatives awarded $5,000 service payments in $525,000 settlement for Fair Labor

8  Standards Act claims).  The Service Payments are also reasonable in relation to the total settlement

9  value, as they constitute a fraction of 1% of the overall fund itself.  Each $2,000 Service Payment only

10  constitutes 0.13% of the $1,550,000 total settlement fund and the $14,000 in total Service Payments is

11  only 0.9% of the fund.  Lastly, no Class Member has objected to the request for Service Payments and

12  they are not opposed by the Defendants.

13  **V.    CONCLUSION**

14  For the reasons set forth above, Plaintiffs' respectfully request that the Court grant their Motion

15  by entering an order approving an award of attorneys' fees in the amount of 25% of the $1,550,000

16  settlement fund (up to $387,500), approving the reimbursement for costs of litigation and settlement

17  administration expenses in the amount of $43,277.48, and approving the award of Service Payments to

18  the Class Representatives.

19  Dated: July 15, 2010                                  Respectfully submitted,

20                                                        ERIC H. GIBBS
                                                          DYLAN HUGHES
21                                                        MATTHEW B. GEORGE
                                                          **GIRARD GIBBS LLP**
22

23                                                        By:___/s/ *Matthew B. George*_____
                                                                  Matthew B. George
24
                                                          Attorneys for Plaintiffs and Class Counsel
25

26

27

28

# EXHIBIT 1

1    Eric H. Gibbs (State Bar No. 178658)
     ehg@girardgibbs.com
2    Dylan Hughes (State Bar No. 209113)
     dsh@girardgibbs.com
3    Matthew B. George (State Bar No. 239322)
     mbg@girardgibbs.com
4    **GIRARD GIBBS LLP**
     601 California Street, 14th Floor
5    San Francisco, California 94108
     Telephone: (415) 981-4800
6    Facsimile: (415) 981-4846

7
     Charles A. Ercole, Esquire
8    cercole@klehr.com
     **KLEHR, HARRISON, HARVEY,**
9    **BRANZBURG & ELLERS, LLP**
     260 S. Broad Street
10   Philadelphia, Pennsylvania 19102-5003
     Telephone: (215) 569-4282
11   Facsimile: (215) 568-6603

12
13   *Attorneys for Plaintiffs*

14               **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
15                       **RIVERSIDE DIVISION**

16

| | |
|---|---|
| 17  In re FLEETWOOD ENTERPRISES, INC., | ) CASE NO. 6:09-bk-14254-MJ |
| 18            Debtor, | ) Chapter 11 |
| 19 | ) [Jointly Administered] |
| 20  SANDRA JUSTICE, ALICIA RICE, RONALD DOUD, JEREMIAH HASTINGS, BRIAN | ) ADV. NO.: 6:09-ap-01114-MJ |
| 21  TUCKER, and ROBERT MYERS, individually and on behalf of other similarly situated persons, | ) |
| 22            Plaintiffs, | ) **ORDER GRANTING PLAINTIFFS'** **MOTION FOR (1) ATTORNEYS' FEES** **AND COSTS; AND (2) SERVICE** |
| 23  v. | ) **PAYMENTS TO CLASS** **REPRESENTATIVES** |
| 24  FLEETWOOD ENTERPRISES, INC., FLEETWOOD TRAVEL TRAILERS OF OHIO, | ) |
| 25  INC., FLEETWOOD MOTOR HOMES OF CALIFORNIA, INC., and FLEETWOOD | ) Date:    August 5, 2010 |
| 26  TRAVEL TRAILERS OF OREGON, INC., | ) Time:    1:30 p.m. Place:   Courtroom 301 |
| 27 | )         3420 Twelfth Street |
| 28            Defendants. | )         Riverside, CA 92501 Judge:   Honorable Meredith A. Jury |

Upon consideration of the *Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Payments to Class Representatives* ("Stipulation") filed by Plaintiffs Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker, Robert Myers and Curtis Jay Howe (the "Plaintiffs"), and having reviewed and considered the Motion and the Joint Declaration of Charles A. Ercole and Eric H. Gibbs as well as the Declarations of Charles A. Ercole, Eric H. Gibbs, Richard M. Paul, and Daniel C. Lapidus filed in support thereof, and having reviewed and considered the terms and conditions of the proposed Settlement as set forth in the Settlement Agreement, a copy of which has been submitted with the Motion; and no objection to the Motion having been submitted; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 105(a), 157, 1334 and Federal Rule of Bankruptcy Procedure 7023 (incorporating Federal Rule of Civil Procedure 23); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and upon the hearing on the Motion and after due deliberation, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.     Capitalized terms used in this Order that are not otherwise identified herein have the meaning assigned to them in the Settlement Agreement.

2.     For the purpose of facilitating the settlement, the Court designates WARN Class Plaintiffs Sandra Justice, Alicia Rice, Ronald Doud, Jeremiah Hastings, Brian Tucker and Robert Myers as the WARN Class Representatives.

3.     For the purpose of facilitating the settlement, the Court designates Severance Class Plaintiff Curtis J. Howe as the Severance Class Representative.

4.     For the purpose of facilitating the settlement, the Court designates Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Girard Gibbs LLP as Class Counsel.

**<u>Attorneys' Fees for Class Counsel</u>**

5.     The Court has authority to award attorneys' fees to Class Counsel pursuant to Bankruptcy Rule 7023 incorporating Federal Rule of Civil Procedure 23(h) which states "In a certified class action

1

the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."

6.    Class Counsel shall be awarded reasonable attorneys' fees in the amount of 25% of the maximum settlement fund of $1,550,000 which shall be equal to or less than $387,500.  The Court finds that the award of 25% of the common fund as attorneys' fees  is fair and reasonable taking into account (i) the results of the case achieved including the size of the settlement fund and number of persons to be compensated; (ii) the complexity the legal and factual issues posed by the case; (iii) the contingent nature of the case including the risk of non-payment and the financial burden carried by Class Counsel; (iv) the substantial amount of time and resources devoted to the case by Class Counsel; (v) the skill and efficiency of Class Counsel; (vi) awards in similar cases; (vii) that Class Counsel entered into contingent fee agreements with the Plaintiffs and numerous Class Members that provide for a higher contingent fee of 33-1/3%; and (viii) that a lodestar cross-check reveals that Class Counsel's requested fee is almost equivalent to the fee award sought; and (ix) that in the Ninth Circuit, a range of 25% to 33% of the total amount recovered for the class has been recognized as the range in which common fund fee awards are frequently awarded.

### Class Counsel's Litigation Expenses

7.    Class Counsel have submitted evidence to substantiate the amount of its requested costs and expense reimbursements including the costs of settlement administration. The Court, finding that such reimbursements are appropriate, awards Class Counsel litigation expenses in the amount of $43,277.48 from the settlement fund.

### Service Payments to Class Representatives

8.    The Court approves an award of Service Payments in the amount of $2,000 each to each of the Class Representatives.  The Court finds that these Service Payments are fair and reasonable considering (i) the time and efforts the Class Representatives have spent assisting Class Counsel and other Class Members in the prosecution of this action; (ii) the risks taken by the Class Representatives in bringing a class action lawsuit against their former employer; and (iii) the reasonableness of the amount of the Service Payments in relation to the total Settlement Fund.

### # # #